UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DOMINION EXPLORATION & PRODUCTION, INC., HYDRO GULF OF MEXICO, LLC  AND ANADARKO PETROLEUM CORPORATION<br><br>VERSUS<br><br>DELMAR SYSTEMS, INC.  AND CORDOARIA SAO LEOPOLDO, S.A. | CIVIL ACTION<br><br>NO.  07-9492<br><br>SECTION "L" – MAGISTRATE # 1<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE SALLY SHUSHAN |

**AMENDED COMPLAINT OF
DOMINION EXPLORATION & PRODUCTION, INC,
STATOILHYDRO USA E&P, INC. AND
<u>ANADARKO PETROLEUM CORPORATION</u>**

The Amended Complaint of **DOMINION EXPLORATION & PRODUCTION, INC.** ("DEPI"), STATOILHYDRO USA E&P, INC. ("Statoil") and **ANADARKO PETROLEUM CORPORATION** ("Anadarko") against **DELMAR SYSTEMS, INC.** ("Delmar") and **CORDOARIA SAO LEOPOLDO, S.A.** ("CSL") in causes of action both in tort and contract respectfully alleges as follows:

{N1768928.1}

## **PARTIES**

1.

Plaintiff, DEPI, is a Delaware corporation and has its principal place of business in Jane Lew, West Virginia.

2.

Plaintiff, Statoil, is a Delaware corporation and has its principal place of business in Houston, Texas.

3.

Plaintiff, Anadarko, is a Delaware corporation and has its principal place of business in The Woodlands, Texas.

4.

At all times material herein, Delmar was, and still is, a corporation organized and existing by virtue of the laws of Louisiana and is authorized to do and is doing business in Louisiana, within the jurisdiction of this Honorable Court and has its principal place of business in Broussard, Louisiana.

5.

At all times material herein, CSL was, and still is, a corporation organized and existing by virtue of the laws of Brazil and doing and soliciting business in Louisiana, within the jurisdiction of this Honorable Court and has its principal place of business at Sao Borja 372, Bairro Rio Branco, Rio Grande do Sul, Brazil, 93032-000.

## **JURISDICTION**

6.

This Court has subject matter jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333 et seq..  In the alternative under 28 U.S.C. § 1332, there is complete diversity of citizenship between the plaintiffs and both defendants and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## **VENUE**

7.

Venue is proper in this District pursuant to 43 U.S.C. § 1349(b) because both defendants can be found in this District.  In addition, this District is the judicial district of the State nearest the place the cause of action arose because the Eastern District of Louisiana is the closest judicial district to DeSoto Canyon, Block 618, San Jacinto Project, Well #2, the location of the failure of the mooring system at issue herein.  Venue is also proper under 28 U.S.C. § 1391 because Delmar is subject to personal jurisdiction in this District.

## **GENERAL FACTS STATEMENT**

8.

DEPI is engaged in the business of oil and gas exploration and production and was, at all pertinent times, the operator and 53.3335% owner of that certain well designated as DeSoto Canyon, Block 618, San Jacinto Project, Well #2 ("Well #2"), located on the Outer Continental Shelf in the Gulf of Mexico off the coast of Louisiana. Statoil is a 26.666% owner of the Well #2 and Anadarko is a 20% owner of the Well #2.

{N1768928.1}

- 3 -

9.

At all times material herein, DEPI acted in its capacity as an owner and operator of Well #2 and conducted joint operations on behalf of all owners of Well #2 pursuant to the Joint Operating Agreement entered into between DEPI, Hydro and Anadarko.

10.

At all times material herein, Delmar was engaged in the rental of offshore mooring systems for drilling rigs and actively solicited and engaged in business with buyers located in the State of Louisiana.  In addition, Delmar employed sales representatives located in Louisiana whose sales territory included this District.

11.

At all times material herein, CSL was engaged in the manufacture and sale of polyester mooring lines and, upon information and belief, actively solicited and engaged in business with buyers located in the State of Louisiana.

12.

In or about the summer of 2005, DEPI, through its office located in New Orleans, Louisiana, and Delmar, through its office located in Broussard, Louisiana, engaged in communications regarding the possible rental of a mooring system provided by Delmar for an offshore semi-submersible drilling rig.

13.

On or about December 5, 2005, DEPI and Delmar entered into an Offshore Master Service Contract (the "MSA") pursuant to which Delmar was to provide services to DEPI.

14.

On or about October 13, 2005, Delmar issued a written proposal to the New Orleans office of DEPI for the rental of a preset mooring system (the "Mooring System") for the Noble Semi-Submersible Drilling Rig AMOS RUNNER (the "AMOS RUNNER") for operations at Well #2.

15.

Beginning on or about September 6, 2006, Delmar installed the Mooring System on location at Well #2 on the Outer Continental Shelf of the United States off the coast of Louisiana.

16.

On or about March 9, 2007, the AMOS RUNNER arrived at the Well #2 location and was thereafter tethered to the Mooring System.  The AMOS RUNNER was hired by DEPI to conduct exploration and production operations for DEPI at Well #2.

17.

The Mooring System was provided by Delmar for the express purpose of securing the AMOS RUNNER at the Well #2 site so that drilling operations could be conducted by DEPI for the exploration and production of oil and gas from the seabed of the Outer Continental Shelf.

18.

On or about April 24, 2007, at approximately 3:30 a.m., the Mooring System failed, causing damage to DEPI, Hydro/Statoil and Anadarko in the form of property

damage, increased expenses and incidental costs, loss of production and other losses, damages, expenses and costs.

19.

The segment of the Mooring System that failed was a 6.3 inch polyester mooring rope provided by Delmar and manufactured by CSL (the "Failed Mooring Rope").

20.

The Mooring System failed due to manufacturing defects in the Failed Mooring Rope which was a component incorporated by Delmar into the Mooring System rented by Delmar to DEPI and which defects existed at the time of delivery to DEPI and which Delmar and/or CSL knew or should have known existed.

21.

Between April 24, 2007 and June 16, 2007, the Mooring System was under repair and was unusable. The Mooring System was placed back in service for use by the AMOS RUNNER on June 16, 2007.

22.

At the time of the failure of the Mooring System on April 24, 2007, the 26.666% interest in the Well #2, currently owned by Statoil, was owned by Statoil's affiliated sister company, Hydro Gulf of Mexico, L.L.C. ("Hydro"). Subsequent to the aforesaid failure of the Mooring System, Hydro transferred to Statoil its interest in DeSoto Canyon, Block 618, including its 26.666% interest in Well #2 and its rights, claims and causes of action that Hydro had or may have against any party arising from or in any way related to

the failure of the Mooring System entitling Statoil to recover for all damages sustained by Hydro.

## FIRST CAUSE OF ACTION - BREACH OF EXPRESS AND IMPLIED WARRANTIES

23.

DEPI, Statoil and Anadarko repeat and reallege each of the allegations contained in paragraphs 4 through 21 of this Complaint as if each was more fully set forth at length herein.

24.

At the time of the delivery to DEPI, Delmar knew or had reason to know of the purpose for which DEPI rented the Mooring System and that DEPI was relying on Delmar to furnish a Mooring System suitable and fit for that purpose. Delmar's knowledge or reason to know arose out of Delmar's expertise and Delmar's knowledge that DEPI was engaged in the exploration and production of oil and gas from Well #2 located on the seabed of the Outer Continental Shelf and that DEPI was renting the Mooring System to secure the AMOS RUNNER for operations at Well # 2.

25.

Pursuant to Sections 1 and 14 (b) of the MSA, Delmar expressly warranted that all work and services performed by Delmar would be performed "in a good and workmanlike manner and to the full and complete satisfaction of [DEPI]" and that "any work performed by [Delmar] hereunder shall be performed with the skill, proficiency and expertise which is commensurate with that normally exercised by industry anchor

handling standards with respect to services of a comparable nature and shall be in accordance with applicable specifications and design criteria."

26.

Delmar breached the express warranties of the MSA by providing an inherently defective Mooring System which failed during its intended use while mooring the AMOS RUNNER for operations at Well #2.

27.

The warranty was false and untrue in that the Mooring System was an inherently defective and unfit for use with the AMOS RUNNER at the Well #2 location.

28.

As a part of the transaction, Delmar stated, and DEPI believed, that the Mooring System contained new polyester mooring line.  This representation, affirmation or promise was made to induce, and did induce, DEPI to rent the Mooring System, and was intended by the parties to become a part of the basis of the transaction.  This affirmation constituted an express warranty that the product would conform to the affirmation or promise.

29.

DEPI relied on the skill, judgment and superior knowledge of Delmar and upon the express and implied warranties of fitness and suitability for a particular purpose, which purpose was well known to Delmar, and of merchantable quality to be used for the purpose for which it was designed, produced, made, fabricated, supplied, distributed and/or rented by Delmar to DEPI.

30.

In using the Mooring System, DEPI relied upon the skill and knowledge of Delmar to furnish the Mooring System suitable for its intended purpose for use in with the AMOS RUNNER at the Well #2 location.  As a result, Delmar impliedly warranted the goods to be, in all respects, fit and suitable for that purpose.

31.

In connection with this use of the Mooring System by DEPI, there arose an implied warranty on the part of Delmar that the Mooring System should be of merchantable quality and should, among other things, be fit for the ordinary purpose for which such goods are used, namely use as a mooring system for an offshore semi-submersible drilling rig in the Gulf of Mexico.

32.

On or about March 7, 2007, the said Mooring System was attached to the AMOS RUNNER at the Well #2 location, a purpose for which it was intended and for which DEPI was utilizing the Mooring System, but DEPI found said Mooring System to be wholly unfit and useless for such purpose.

33.

Relying on the express and implied warranties, DEPI attempted to use the Mooring System for its intended purpose but the Mooring System was unsuitable for that purpose in that the Mooring System failed under normal and intended use.

34.

As a result of the failure of the Mooring System, DEPI, Hydro/Statoil and Anadarko have suffered property damage, increased expenses and incidental costs, loss of production and other losses, damages and expenses and costs.

35.

After the failure of the Mooring System, DEPI notified Delmar of the failure.

36.

Delmar breached its warranty of fitness for the particular purpose in that Delmar was at all times aware of the purpose for which DEPI was using the Mooring System and Delmar represented and warranted that the Mooring System was suitable for such purpose, all of which was breached by the failure of the Mooring System causing damage to DEPI, Hydro/Statoil and Anadarko.

37.

Delmar breached its warranty of merchantability in that Delmar represented and warranted to DEPI that the Mooring System was suitable for the purpose for which it would normally be employed, to wit: use as a mooring system for an offshore semi-submersible drilling rig in the Gulf of Mexico, and that such representations and warranties were breached by the failure of the Mooring System, all of which caused damage to DEPI, Hydro/Statoil and Anadarko.

38.

Accordingly, Delmar has breached its express warranties under the MSA and the warranties of fitness and merchantability, express and implied.

{N1768928.1}

## SECOND CAUSE OF ACTION -BREACH OF CONTRACT

39.

DEPI, Statoil and Anadarko repeat and reallege each of the allegations contained in paragraphs 4 through 37 of this Complaint as if each was more fully set forth at length herein.

40.

Delmar has breached the MSA by providing a Mooring System that failed.

41.

The object of the MSA was DEPI's rental of a Mooring System suitable and fit for the purpose of mooring the Amos Runner for operations at Well # 2.

42.

The failure of the Mooring System constitutes breach of the MSA as a failure of Delmar to perform under the MSA "in a good and workmanlike manner and to the full and complete satisfaction of [DEPI]".

43.

Moreover, the failure of the Mooring System constitutes breach of the MSA as a failure of Delmar to perform under the MSA "with the skill, proficiency and expertise which is commensurate with that normally exercised by industry anchor handling standards with respect to services of a comparable nature and shall be in accordance with applicable specifications and design criteria."

44.

As a result of its breach of the MSA, Delmar is liable to DEPI, Statoil and Anadarko for damages as set forth in paragraph 63. In addition, Delmar is not entitled to enforce any provisions of the MSA in its favor.

## **THIRD CAUSE OF ACTION - STRICT PRODUCT LIABILITY**

45.

DEPI, Statoil and Anadarko repeat and reallege each of the allegations contained in paragraphs 4 through 43 of this Complaint as if each was more fully set forth at length herein.

46.

CSL was the designer, producer, maker, fabricator, manufacturer, supplier, distributor, and/or vendor of the Failed Mooring Rope.

47.

Delmar was the designer, producer, maker, fabricator, manufacturer, supplier, distributor, and/or vendor of the failed Mooring System.

48.

The Mooring System which was designed, produced, made, fabricated, supplied, distributed and/or rented by Delmar to DEPI was defective in that it was unreasonably dangerous for normal and intended use as a mooring system.

49.

The Failed Mooring Rope which was designed, produced, made, fabricated, supplied and/or distributed by CSL was defective in that it was unreasonably dangerous for normal and intended use as a mooring rope.

50.

DEPI was unaware of any of the defects in the Failed Mooring Rope and/or the Mooring System nor of any danger to DEPI either at the time of rental or at the time the Failed Mooring Rope and/or the Mooring System was placed into use.

51.

The defects in the Failed Mooring Rope and/or the Mooring System were not obvious to DEPI and DEPI could not have, by the exercise of reasonable care, discovered the defects and perceived their dangers.

52.

CSL and Delmar had knowledge of or should have had knowledge of the defects in the Failed Mooring Rope and/or the Mooring System.

53.

Delmar supplied the Failed Mooring Rope and/or the Mooring System for use by DEPI in a defective condition, unreasonably dangerous to DEPI.

54.

The said defects and dangerous condition existed at the time the Failed Mooring Rope and/or the Mooring System were supplied to DEPI.

55.

Accordingly, CSL and/or Delmar are strictly liable to DEPI ,Statoil and Anadarko under La R.S. 9:2800.51 et. seq. for damages as set forth in paragraphs 66 and 67 in the following particulars:

A. For the designing, producing, making, fabricating, supplying, distributing and/or rental of the Failed Mooring Rope and/or the Mooring System which they knew or should have known were defective;

B. For failing to adequately inspect and test the fitness of the said Failed Mooring Rope and/or the Mooring System prior to its supply to DEPI;

C. For failing to warn DEPI of the defects, dangerous condition and lack of fitness of the Failed Mooring Rope and/or the Mooring System;

D. For supplying a Failed Mooring Rope and/or the Mooring System which did not conform to express warranties made by CSL and Delmar which induced DEPI to use the Failed Mooring Rope and/or the Mooring System.

## **FOURTH CAUSE OF ACTION - NEGLIGENCE**

56.

DEPI, Statoil and Anadarko repeat and reallege each of the allegations contained in paragraphs 4 through 54 of this Complaint as if each was more fully set forth at length herein.

57.

CSL and Delmar were negligent in their failure to properly and adequately test and/or inspect the Failed Mooring Rope and/or the Mooring System for fitness prior to being supplied to DEPI.

58.

CSL and Delmar were negligent in providing an inherently defective product which they knew or should have known was defective and for other acts of negligence to be shown at the trial of the case.

59.

CSL and Delmar were negligent in failing to adequately warn DEPI of the vices or defects and/or the harmful characteristics of the Failed Mooring Rope and/or the Mooring System supplied to DEPI.

60.

The damages sustained by DEPI, Hydro/Statoil and Anadarko which are further set forth herein in paragraphs 66 and 67 have been proximately caused by the negligence of CSL and Delmar.

**FIFTH CAUSE OF ACTION - UNJUST ENRICHMENT/PAYMENT IN ERROR**

61.

DEPI, Statoil and Anadarko repeat and reallege each of the allegations contained in paragraphs 4 through 59 of this Complaint as if each was more fully set forth at length herein.

62.

After the failure of the Mooring System, Delmar sent invoices to DEPI for rental and repair work performed on the Mooring System. These invoices amount to $4,142,809.02.

63.

Through mistake and error, DEPI processed the invoices and paid $3,256,759.02 of the total invoices to Delmar.

64.

Delmar is not entitled to payment of the $3,256,759.02 which was paid by DEPI in error.

65.

Accordingly, Delmar has been unjustly enriched and DEPI, Hydro/Statoil and Anadarko has been unjustly impoverished. The enrichment to Delmar and the impoverishment to DEPI, Hydro/Statoil and Anadarko are connected, unjustified, and lacking in cause. Further, in the event the Court declines to grant DEPI, Statoil and Anadarko relief on its other causes of action, then DEPI, Statoil and Anadarko are without a remedy at law.

66.

As a result of this unjust enrichment, DEPI, Statoil and Anadarko are entitled to recover damages from Delmar the amounts paid in error.

## DAMAGES

67.

DEPI, Statoil and Anadarko repeat and reallege each of the allegations contained in paragraphs 4 through 65 of this Complaint as if each is more fully set forth at length herein.

68.

As a result of the aforesaid breaches of warranties, breaches of contract, strict liability, negligence, unjust enrichment and defects in the Failed Mooring Rope and/or the Mooring System, DEPI, Hydro/Statoil and Anadarko have sustained damages in the amount of $50,000,000.00 including damage to DEPI, Hydro /Statoil and Anadarko in the form of property damage, increased expenses and incidental costs, cost of repairs, damage to the well, delays in production, loss of production, repairs, delays, legal fees and other incidental expenses and disbursements all of which were incurred as a direct and proximate result of the fault of Delmar and CSL.

## CLAIM FOR RELIEF

**WHEREFORE,** Dominion Exploration & Production, Inc., StatoilHydro USA E&P, Inc. and Anadarko Petroleum Corporation pray that Delmar Systems, Inc. and Cordoaria Sao Leopoldo, S.A. be summoned to appear and answer, and that on final trial and judgment Dominion Exploration & Production, Inc., StatoilHydro USA E&P, Inc. and Anadarko Petroleum Corporation shall recover against Delmar Systems, Inc. and Cordoaria Sao Leopoldo, S.A. in the amount of $50,000,000.00 along with prejudgment interest, reasonable attorneys' fees, cost of suit and such other and further relief, both

{N1768928.1}

special and general, at law or in equity, to which Dominion Exploration and Production, Inc., StatoilHydro USA E&P, Inc. and Anadarko Petroleum Corporation may be justly entitled.

This 15th day of February, 2008.

Respectfully submitted,

/s/ James E. Wright, III
JAMES E. WRIGHT, III , T.A (#13700) .
L. ETIENNE BALART (#24951)
Jones, Walker, Waechter, Poitevent
 Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8234
Facsimile: (504) 589-8234
E-Mail: jwright@joneswalker.com
Attorneys for Dominion Exploration &
Production, Inc., StatoilHydro USA E&P, Inc.
and Anadarko Petroleum Corporation