## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOMINION EXPLORATION &** | **CIVIL ACTION** |
| **PRODUCTION, INC., ET AL.** | |
| | |
| **VERSUS** | **NO. 07-9492** |
| | |
| **DELMAR SYSTEMS, INC. AND** | **SECTION "C" (1)** |
| **CORDOARIA SAO LEOPLODO, S.A.** | |

## ORDER AND REASONS[1]

Before the Court is a Motion to Dismiss for Insufficiency of Service of Process filed by the defendant Cordoaria São Leopoldo, S.A. ("Cordoaria").  The plaintiffs Dominion Exploration & Production, Inc., StatoiHydro USA E&P, Inc. and Andarko Petroleum Corporation (collectively "plaintiffs") oppose this motion.  The motion is before the Court on the briefs, without oral argument.  Having considered the memoranda of counsel, the record and the applicable law, the Court finds that the Cordoaria's motion is **GRANTED.**

### I. Factual Background

This case is before the court on a motion to dismiss for insufficiency of process filed by Cordoaria. (Rec. Doc. 34).  In the underlying action, the plaintiffs assert products liability and

---

[1] Michelle E. Durieux-Oquendo, a third year law student at Tulane University Law School, assisted in the research and preparation of this opinion.

negligence claims against Cordoaria, a manufacturer organized under the laws of Brazil and headquartered there. (Rec. Doc. 34, p. 3).  Cordoaria manufactures synthetic rope for nautical use, as well as for use in the oil and gas offshore industry. <u>Id.</u>  Cordoaria sells its products outside of Brazil. <u>Id.</u>

The plaintiffs are engaged in the business of oil and gas exploration and production. (Rec. Doc. 49, p. 2).  As part of their business, the plaintiffs operated a well, located of the coast of Louisiana. <u>Id.</u>  The plaintiffs allege in the complaint that, on April 24, 2007, the mooring system failed due to the use of a rope manufactured by Cordoaria. (Rec. Doc. 10, ¶ 19).  The plaintiffs filed suit in the Eastern District of Louisiana to recover for the damages caused by the failure of the mooring system. (Rec. Doc. 10).

The plaintiffs sought to effect service of process through the procedures set forth in the Inter-American Convention on Letters of Rogatory and Additional Protocol ("IAC").  (Rec. Doc. 49, p. 3).  Before service was perfected pursuant to this Convention, the plaintiffs personally served Erik Schmidt ("Schmidt") at the Offshore Technology Conference in Houston, Texas ("OTC"). <u>Id.</u>  The parties disagree as to the legal effect of that service.

Cordoaria challenges the validity of service of process on two grounds. (Rec. Doc. 34, p. 2). First, Cordoaria alleges that service on a Brazilian corporation is ineffective if it does not comply with Brazilian law. <u>Id.</u> Second, Cordoaria asserts that, even if the court does not apply Brazilian law, service is not proper pursuant to the Federal Rules of Civil Procedure because Schmidt lacked authority to receive service. (Rec. Doc. 50, p. 6).  Cordoaria alleges that the

employment relation with Schmidt terminated before the OTC. (Rec. Doc. 50, p. 7).  As alleged by Cordoaria, Schmidt attended the conference as a representative of CSL Offshore, S.A. Id. This is a corporation distinct from Cordoaria, to which Schmidt provided marketing sales services. (Rec. Doc. 34, P. 4) According to Cordoaria, the plaintiffs only furnished proof of what others thought Schmidt's relation with Cordoaria was at the time of service. (Rec. Doc. 50, p.50).

On the other hand, the plaintiffs assert that the process server, once at the OTC, located Cordoaria's booth and identified a man who was bearing a tag with the name "Erik Schmidt" and the company name "Cordoaria Sao Leopoldo, S.A." (Rec. Doc. 49, p. 3).  The process server served Schmidt, who did not refuse to accept the documents. Id. The plaintiffs also challenge the assertion that Schmidt, at the time of service, was no longer an employee of Cordoaria.  (Rec. Doc. 50, p. 90).  According to the plaintiffs, Schmidt, during the OTC, met with the co-defendants where he took an active role representing Cordoaria. (Rec. Doc. 49, p. 8). Moreover, at the OTC, Schmidt also handed out business cards that identified him as Cordoaria's "International Sales Manager". (Rec. Doc. 49, p. 6).   Therefore, the plaintiffs assert that Schmidt's "knowledge and involvement . . . , in addition to his position as International Sales Manager, bring Schmidt within the definition of managing or general agent . . .." (Rec. Doc. 49, p. 8).

## II. Standard of Review

For a federal court to assert personal jurisdiction over a claim, the plaintiff must validly serve process upon Cordoaria. See Omni Capital Int'l v, Ltd. v. Rudolf Wolf & Co., 484 U.S. 97, 104 (1987).  Therefore, the Federal Rules of Civil Procedure authorize the courts to dismiss a

3

civil action for insufficient service of process. Fed. R. Civ. P. 12(b)(5).  The plaintiff bears the burden of demonstrating the validity of the service when an objection is made. Carmini v. Royal Caribbean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir. 1992). In making such a determination, the court "must look outside the complaint" to assess what measures the plaintiff took to ensure effective service of process upon the defendant. C3 Media & Mktg. Group, LLC v. Firstgate Internet, Inc., 419 F.Supp.2d 419, 427 (S.D.N.Y. 2005).

## III. Analysis

A. Service Effectuated within the United States upon a Brazilian Corporation Need Not Comply with Brazilian Law

Cordoaria urges the Court to dismiss the suit because service of process is ineffective under Brazilian law, the Inter-American Convention on Letters of Rogatory ("IAC"), and federal and state law. (Rec. Doc. 34, p. 2).   As such, the "plaintiffs' attempted service is null and void." Id.  According to Cordoaria, Laker Airways Ltd. v. Sabena, Belgian World Airlines, 731 F.2d 909, 937 (D.C. Cir. 1984) stands for the proposition that the principles of international comity require foreign law to be given effect in domestic courts. (Rec. Doc. 50, p. 5).

The plaintiffs oppose Cordoaria's motion to dismiss on the grounds that service was effectuated within the United States and not in Brazil, accordingly under Fed. R. Civ. P. 4(h)[2],

---

[2]Rule 4(h) provides in relevant part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation . . . that is subject to suit under a common name must be served:  (1) in a judicial district of the United States: . . . (B) by delivering a copy of the summons and the complaint to an office, a managing or general agent or any other agent authorized by appointed or by law to receive service of

service need not comply with Brazilian law. (Rec. Doc. 49, p. 10).  Moreover, they allege, that the IAC is not the exclusive means of effecting service on a corporation located in a signatory country.  The plaintiffs allege that if the IAC were the exclusive means of effecting service of process upon a foreign corporation, Fed. R. Civ. P. 4(h)(1) would be meaningless.  According to Fed. R. Civ. P. 4(h) a "foreign corporation must be served . . . in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to . . . a managing or general agent."  In their view, it is only when extraterritorial service of process is attempted that foreign law comes into play. This Court agrees with the plaintiffs' contention that service need not comply with Brazilian law.

Brazil and the United States are signatories of the IAC. <u>Tucker v. Interarms</u>, 186 F.R.D. 450, 451 (D. Ohio 1999).  Article 2 of the IAC establishes that "[t]his convention shall apply to letters rogatory, issued in conjunction with proceedings in civil and commercial matters held before the appropriate judicial or adjudicatory authority."  Inter-American Convention on Letters of Rogatory, Jan. 30, 1975, art.2. As such, the IAC only regulates the transmittal of documents abroad and does not "supplant all alternative methods of service." <u>Kreimerman v. Casa Veerkamp</u>, S. A. de C.V., 22 F.3d 634, 640 (5th Cir. 1990); <u>see also</u> <u>Lake Charles Cane LaCassine Mill, LLC v. Smar Int'l</u>, No. 07-CV-667, 2007 WL 1695722, at *1 (D. La. June 8, 2007); <u>Tucker v. Interarms</u>, 186 F.R.D. at 452.

---

process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . .

The IAC regulates how letters of rogatory are to be executed; it does not prescribe them as the only means to effectuate service upon foreign corporations.  Cordoaria urges the court to quash service of process on Schmidt because service of process on a managing agent is not recognized under Brazilian law or a treaty. (Rec. Doc. 34, p. 6).   However, federal courts are required to give effect to clear congressional mandates, even in the face of a potential conflict with the laws of another state.  FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson, 636 F.2d 1300, 1323 (D.C. Cir. 1980).  In the present case, the plaintiffs served Schmidt within a judicial district of the United States by delivering a copy of the summons and the complaint.  As such, service complies with the requirements of Fed. R. Civ. P. 4(h) if Schmidt is a "managing or general agent."

Cordoaria relies on several cases in which the court held to be ineffective service that was made upon foreign defendants by sending process documents through the mail.  For instance, in Lake Charles v. Smart Int'l Corp, the plaintiff sought to effect service upon a Brazilian corporation at its office in Brazil. Lake Charles, 2007 WL 1695722, at *1. The court noted that "Brazilian law expressly holds that [s]ervice of process of legal pleadings/documents instituted by a foreign citizen in a foreign court of law that has been conducted upon a corporate citizen of Brazil by means of Federal Express is null, void and without effect." Id. at *2.  In light of this, the court quashed the attempted service. Id.   Analogously, in Alpha Omega Tech., Inc. v. PGM-Comercio E Participacoes Ltda., plaintiff served a Brazilian defendant by certified mail.  Alpha Omega Tech., Inc. v. PGM-Comercio E Participacoes Ltda., No. 93 Civ. 6257, 1994 WL 37787, at * 1.  The court found this service to be improper. Id.  Cordorias' reliance on those

cases is misplaced.  In the present case, service was not "effected in a place not within any judicial district of the United States" as to trigger the requirements of Fed. R. Civ. 4(f).  Nor was service attempted by delivering process documents through the post, process that would be regulated by the IAC.  Here, Schmidt was served when found within the jurisdiction of the United States.  (Rec. Doc. 34, p. 2).

Cordoaria argues that any method of service that is not recognized under Brazilian law is invalid because "[a] contrary result would undermine the principles of international comity . . .." (Rec. Doc. 50, p. 6).  However, it is the act of effectuating service "on a foreign citizen on foreign soil . . .[that] constitutes an exercised on one nation's sovereignty within the territory of another sovereign."  Trading Comm'n v. Nahas, 738 F.2d 487, 493-94 (D.C. Cir. 1984).  "Such an exercise [absent consent by the foreign nation] constitutes a violation of international law." Id.  In Nahas, the defendant was a citizen of Brazil that was served in Brazil a subpoena *decus tecum*. Id. at 489. The court quashed the subpoena and concluded that "[s]uch an intrusion on the sovereignty of another nation impinges on principles of international law and should be avoided unless expressly mandated by congress."  Id. at 494.  Moreover, the court noted that "subpoena service by direct mail upon a foreign citizen on foreign solid, without warning to the officials of the local state and without initial request for or prior resort to established channels of international judicial assistance, is perhaps maximally intrusive." Id. at 495.  The service attempted by Cordoaria does not intrude upon Brazil's sovereignty. Moreover, the federal rules allow service on a foreign corporation to be effected by serving an agent found within the U.S.

Fed. R. Civ. P. (h)(1).  As such, the Court needs to assess whether service on Schmidt is valid as to Coardoria.

### B. Affidavits submitted as exhibits

The plaintiffs object to the admissibility of the affidavits filed by Cordoaria in support of the motion to dismiss for failure to serve. (Rec. Doc. 60, p. 11).  According to the plaintiffs, these affidavits are out of court statements offered to prove the truth of the matter asserted. Id. As such, they should be excluded pursuant to F.R.E. 801.  Cordoaria alleges that plaintiffs' objection is meritless since "affidavits, documents, and statements are routinely and properly considered where service of process is at issue." (Rec. Doc. 50, p. 8).

The Court agrees with Cordoaria's contention.  Courts have consistently held that a motion to dismiss for failure to effect service of process requires the "defendant to produce affidavits discovery material, or other admissible evidence establishing the lack of proper service." High Island Health LLC v. Libertbelle Marketing Ltd., No. H-06-2931, 2007 WL 1173631, at * 4 (April 18, 2007) citing Nikwei v. Ross School of Aviation, Inc., 822 F.2d 939, 941 (10th Cir. 1987); Jones v. Jones, 217 F.2d 239, 242 (7th Cir. 1954).  At this stage of the proceedings, the court "has discretion to consider hearsay evidence." Camp Pet Co. v. Miale, 2008 WL 4249767 citing Mattel Inc. v. Greiner, 354 F.3d 857, (9th Cir. 2003).  Accordingly, in the present case, the Court will exercise its discretion in evaluating the affidavits submitted by the parties. In making this determination the Court exercises its discretion in admitting hearsay evidence.

C. Schmidt's competency to accept service for Cordoaria

In the memorandum in support of the motion to dismiss and in the reply memorandum, Cordoaria advances several reasons to substantiate its allegation that service on Schmidt does not comply with Fed. R. Civ. P. 4.   Specifically, the plaintiffs challenge that Schmidt is not an employee of Cordoaria. Therefore, he lacked authority to accept service on behalf of Cordoaria. According to Cordoaria, the employment relationship between Schmidt and Cordoaria terminated by May 6, 2008. (Rec. Doc. 50, p. 7).   In support of this proposition, Cordoaria furnishes as proof affidavits of Jose Teofilo Abu-Jamra, Director President of Cordoaria, and of Erik Schmidt, which deny that Schmidt was a managing agent of Cordoaria. (Rec. Doc. 34, Exh. A-B) These affidavits state that Schmidt was not an employee of Cordoaria Sao Leopoldo and that he had formed a corporation through which he provided services to CSL Offshore S.A. Id.

In its reply memorandum to the motion to dismiss, Cordoaria alleges that Schmidt was in Texas at the OTC on behalf of CSL Offshore S.A, a distinct corporation from Cordoaria. (Rec. Doc. 50, p. 7).   In support of this proposition, Cordoaria furnishes as an exhibit a copy of a private service contract entered into by Cordoaria Sao Leopoldo Offshore S.A. and Schmidt. (Rec. Dc. 50, Exh. F).   The thrust of Cordoaria's argument here is that Cordoaria Sao Leopoldo Offshore S.A. and Cordoaria Sao Leopoldo, S.A., the named defendant, are legally distinct entities.

The plaintiffs cast the events in a different light.   According to the plaintiffs, Schmidt was present at the OTC convention in representation of Cordoaria. (Rec. Doc. 49, p. 5). They

contend that at the convention, Schmidt identified himself as an employee of Cordoaria and also attended meetings alleging to be a representative of Cordoaria. Id. at 7. Moreover, plaintiffs attack Cordoaria's allegations as ex post facto assertions meant only to sever the agency and make service ineffective. (Rec. Doc. 60, p. 11).

Factual questions raised in a motion to dismiss for improper service are to be determined by the court. High Island Health LLC, No. H-06-2931, 2007 WL 1173631, at * 4 (D. Tex. April 18, 2007). The courts have "broad discretion as to the methods to be used in resolving the factual dispute." Bryan v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) citing Wyatt v. Terhue, 315 F.3d 1108, 1119-20 (9th Cir. 2003). However, motions to dismiss under Rule 12(b) are "subject to the rules and practices used in the *most analogous* Rule 12(b) motion." Bryan v. Rich, 530 F.3d at 1376 citing 5C Wright and Miller § 1360 at 91. Effective service of process is a requirement to exercise personal jurisdiction. This Court relies on the similarity between a motion to dismiss for failure to serve and a motion to dismiss for lack of personal jurisdiction to address the present factual dispute.

In a motion to dismiss for lack of personal jurisdiction, "conflicts between facts submitted must be resolved in the plaintiffs favor." Camp Pet Co. v. Miale, No. 2008-1109, 2008 WL 4249767, at * 8 (Fed. Dist. Sept. 18, 2008) citing Mattel Inc. v. Greiner, 354 F.3d 859 (9th Cir. 2009). The court need not decide whether the plaintiff has in fact proven its assertions, the only requirement is that a prima facie case be made in support of personal jurisdiction. In Miale, the court noted that there was no need to address hearsay objections at the stage of the proceedings. Camp Pet Co. v. Miale, 2008 WL 4249767,* 7.

It is within the province of the court to make a factual determination as to Schmidt's employment status at the time of service.  To counter the plaintiffs' allegations that Schmidt was, at the time of service, an employee Cordoaria furnishes as proof a copy of a private service agreement between Schmidt and Cordoaria Sao Leopoldo Off-Shore S/A. (Rec. Doc. 50, Exh. F).  Cordoaria also offers declarations under penalty of perjury made by Schmidt and Dr. Abu-Jamra. (Rec. Doc. 50, Exh. E, K).   These are generally deemed as admissible and sufficient to "cogently and convincingly controvert any assumptions . . ." regarding the competency of a person to accept service of process. High Island Health, 2007 WL 1173631, *6.  As such, this Court concludes that Schmidt lacked capacity to receive service for Cordoaria.

Courts have held that continued employment is a precondition for the effective service of process upon a managing agent. Kopio's, Inc. v. Bridgeman Creameries, Inc., 79 N.W.2d 921, 355 (Minn. 1956). A former employee is only regarded as "a former agent whose connections with and responsibilities to such corporation had been severed." Id. This Court finds that plaintiffs have not met its burden of proffering evidence that rebuts Cordoaria's allegations that the employment relationship had terminated by the date service was attempted.  Its conclusion would be the same even if any factual conflicts were adjudicated in plaintiffs favor.

**V. Conclusion**

For the reasons states above,

IT IS ORDERED that the defendant's motion to dismiss for insufficiency of process is **GRANTED** without prejudice to the plaintiffs' right to properly serve. The motion to dismiss for lack of personal jurisdiction is **DISMISSED AS MOOT**. (Rec. Doc. 34).

New Orleans, Louisiana this 29th day of October, 2008.


HELEN C. BERRIGAN
UNITED STATES DISTRICT JUDGE

12