UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DOMINION EXPLORATION & PRODUCTION, INC., ET AL. | CIVIL ACTION |
| VERSUS | NO. 07-9492 |
| DELMAR SYSTEMS, INC., ET AL. | SECTION "A"(1) |

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment To Apply *AmClyde* Proportionate Share Rule and Regarding Liability of Delmar (Rec. Doc. 286)** filed by defendant/counterclaimant Delmar Systems, Inc. Plaintiffs, Dominion Oklahoma Texas Exploration & Production, Inc., et al., oppose the motion. The motion is before the Court on the briefs without oral argument.[1]

A detailed factual background for this case is contained in the Court's Order and Reasons entered on December 3, 2012 (Rec. Doc. 230). It suffices for present purposes to note that this lawsuit involves an incident that occurred on the Outer Continental Shelf off the coast of Louisiana. Pursuant to a contract with Plaintiffs,

---

[1] Delmar has requested oral argument but the Court is not persuaded that argument would be helpful in light of the issues presented.

Delmar provided an offshore mooring system for the AMOS RUNNER. One of the ropes used in the mooring system failed, and the AMOS RUNNER drifted off location ultimately causing Plaintiffs significant damages. The rope that failed was manufactured by Brazilian defendant Cordoaria Sao Leopoldo, SA ("CSL"). It is undisputed that this specific polyester rope was manufactured by CSL years earlier as part of a joint interest program involving several companies that were interested in field testing polyester ropes for offshore mooring systems. (Rec. Doc .294, Exh. 6 Letter Agreement). Plaintiffs' expert has examined the failed rope and attributes its failure essentially to end splicing that occurred when CSL manufactured the rope — a manufacturing practice that would have essentially rendered the rope useless for its intended purpose.

In October 2014 Plaintiffs settled their claims with CSL for a relatively minor amount of money in comparison to the $50 million in damages that they allege in connection with the failed mooring system. Delmar's motion presents two issues, the first of which relates directly to the CSL settlement. First, Delmar moves the Court to determine as a matter of law how the settlement with CSL affects its exposure as a non-settling defendant. Delmar argues that since this case is governed by maritime law, the proportionate share approach promulgated by the Supreme Court in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), should govern.

Second, Delmar moves for summary judgment on the issue of liability, arguing that Plaintiffs' own theory of the case carries with it the implicit conclusion that CSL was 100 percent at fault for the rope failure. If CLS was wholly at fault for the failure, and if

the *AmClyde* proportionate share rule applies, then Delmar posits that it cannot be cast in judgment for any portion of Plaintiffs' damages.[2]

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

On the legal question of whether *AmClyde* applies, the Court is persuaded that

---

[2] Delmar takes its liability argument even further by arguing that the evidence also refutes Plaintiffs' expert's theory of why the rope failed. Delmar takes the position that external forces beyond its control damaged the rope in the time interim between when it preset the mooring system and when the AMOS RUNNER arrived for mooring. All of these contentions present disputed issues of fact.

Delmar has the better argument. While Plaintiffs accurately characterize this case as presenting rather distinct and unique facts, the Court is persuaded that a defendant in Delmar's position is not liable for any more than its proportionate share of fault.[3] The Court recognizes that Plaintiffs have alleged that Delmar's use of the CSL rope constituted *inter alia* a breach of contract. But even if Plaintiffs establish that Delmar breached the parties' contract by using the CSL rope, the Court is not persuaded that Delmar *ipso facto* becomes 100 percent at fault for Plaintiffs' damages. Apportioning fault in this case will not be an easy task given the differing theories of liability but the Court remains persuaded that it must be done nonetheless.

That said, the Court agrees with Plaintiffs' contention that fault cannot be apportioned as a matter of law on the summary judgment record, and more importantly, the record does not establish that Delmar should be absolved of all liability in this case. For reasons that the Court hopes to better understand following trial, Delmar incorporated into the mooring system a rope that had been manufactured not for commercial sale and use but for a test program for Shell Oil Co. many years earlier. Rope of the type at issue is an expensive part of an offshore mooring system so naturally Delmar's decision to use the CSL ropes forces Delmar to labor under the distasteful presumption that it used the rope that it had on hand as a means to cut

---

[3] In *AmClyde*, the Supreme Court held that in admiralty cases a non-settling defendant is liable only for its proportionate share of fault as apportioned amongst all parties. 511 U.S. at 217. In so holding, the Court rejected a *pro tanto* approach that would give the non-settling defendant a credit for the amount received in settlement but render the non-settling defendant liable for the entirety of the remainder of the judgment.

corners on its bid for Plaintiffs' mooring system. The evidence at trial may very well establish that Delmar's use of the rope was perfectly legitimate and reasonable, or that the rope's failure was caused by something wholly unrelated to the fact that the CSL rope was not manufactured for commercial sale (or rental) to third-parties. If the evidence establishes the latter but Plaintiffs nonetheless prove breach of contract, then the Court's task of apportioning damages will be even more challenging. But until such time, Delmar is not entitled to judgment as a matter of law on the issue of liability.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment To Apply *AmClyde* Proportionate Share Rule and Regarding Liability of Delmar (Rec. Doc. 286)** filed by defendant/counterclaimant Delmar Systems, Inc. is **GRANTED IN PART AND DENIED IN PART** as explained above.

October 17, 2016

                                              JAY C. ZAINEY
                                  UNITED STATES DISTRICT JUDGE